IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCOTT L. ANDREWS; and CLAUDIA J. ROHR,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII COUNTY; GREGORY ESTEBAN; JOHN P. STEWART; COREY HASEGAWA; CASEY CABRAL; and DOE DEFENDANTS 1-25,<br><br>Defendants. | CIVIL NO. 11-00512 JMS/BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HAWAII COUNTY, GREGORY ESTEBAN, JOHN P. STEWART, COREY HASEGAWA, AND CASEY CABRAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES FILED NOVEMBER 18, 2011, DOC. NO. 57 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HAWAII COUNTY, GREGORY ESTEBAN, JOHN P. STEWART, COREY HASEGAWA, AND CASEY CABRAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES FILED NOVEMBER 18, 2011, DOC. NO. 57

## I. INTRODUCTION

On August 23, 2011, Plaintiffs Scott L. Andrews ("Andrews") and his wife Claudia J. Rohr ("Rohr") (collectively, "Plaintiffs") filed this action asserting claims pursuant to 42 U.S.C. § 1983 and state law against Defendants Hawaii County Police Department ("HCPD") officers Gregory Esteban ("Esteban"), John P. Stewart ("Stewart"), Corey Hasegawa ("Hasegawa"), and Casey Cabral ("Cabral"), (collectively "Officer Defendants"), and Hawaii County (the "County")

(collectively "Defendants").  Plaintiffs assert that Defendants violated Andrews'

constitutional rights in investigating and prosecuting Andrews for an incident that

occurred at the Hilo green waste facility on August 30, 2007.

Currently before the court is Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint ("FAC"), arguing that Plaintiffs have failed to

state a plausible claim upon which relief can be granted.  Based on the following,

the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

The FAC consists of ninety-nine paragraphs and thirty-five pages, and

often recites conclusory assertions of "deliberate indifference," violation of

constitutional rights, and obstruction of justice in a non-linear timeline of events.

From its review, however, the court discerns the following:

Plaintiffs are a Caucasian married couple, originally from the

mainland, who run a bed and breakfast establishment in Hilo.  Doc. No. 23, FAC

¶¶ 14.  Plaintiffs assert that Caucasians are targeted by Native Hawaiians for

harassment and/or violence.  *Id.* ¶ 16.  In response, HCPD officers allegedly

discourage reporting of such crimes, and the County lacks procedures to prevent

such abuse, fails to train police officers and prosecutors, and fails to supervise

and/or discipline officers and prosecutors.  *Id.* ¶¶ 16-18.  Plaintiffs have openly

criticized HCPD enforcement activities and filed complaints with the HCPD

Chief's Office and Internal Affairs, including complaints against Officer

Defendants.  *Id.* ¶¶ 23-24.  In response, the HCPD and other high ranking officials

have failed to investigate Plaintiffs' allegations.  *Id*. ¶¶ 25-26.

       The actual incident precipitating the filing of this action occurred on

August 30, 2007, when Andrews was allegedly "a victim of a racially motivated

attempted kidnapping at Hawaii County's green waste recycling facility, set in

motion by an angry Native Hawaiian tow truck driver and carried out by third

parties . . . ."  *Id.* ¶ 27.  Although the FAC fails to describe this event in any

coherent detail, Exhibit A to the FAC is a "Victim Statement" from Andrews to

HCPD Police Chief Mahuna explaining the event.  *Id.* Ex. A.  According to this

statement, Andrews was cut off while driving his vehicle by a tow truck driver who

yelled at Andrews, "you fucking haole . . . I'm going to get you."  *Id.* at 1-2.

Andrews continued on to the green waste facility, where three individuals

(apparently associated with the tow truck driver) tried to block Andrews from

leaving and engaged in a vehicular chase through the facility.  *Id.* at 2-3.  Andrews

was ultimately able to flag down Cabral, who interviewed the individuals that

allegedly chased Andrews.  *Id.* at 2.

The FAC asserts that this incident occurred due to the Department of Environmental Management's ("DEM") deliberate indifference and practice of tolerating green waste workers' harassment and threats of those using the green waste recycling facility. *Id.* ¶¶ 29-30. The DEM further allegedly failed to follow up on Andrews' complaint regarding the August 30, 2007 incident and treated Plaintiffs' phone calls regarding the incident with "deliberate indifference." *Id.* ¶ 31. The FAC asserts that the County is liable for this pattern of deliberate indifference due to a lack of effective policies and procedures to prevent these abuses. *Id.* ¶ 32.

The August 30, 2007 incident resulted in several investigations by the HCPD, as well as Andrews' ultimate arrest on August 23, 2009 for one count of terroristic threatening and four counts of reckless endangerment. *Id.* ¶¶ 28, 63. Cabral was the investigative officer for Andrews' complaint of unlawful imprisonment and two truck drivers' complaint against Andrews for reckless driving, and Hasegawa was the investigative officer for the green waste workers' and one of the tow truck drivers' friend's complaint against Andrews for reckless endangering. *Id.* ¶ 33. Stewart was the ranking field officer at the scene, and Esteban was the ranking officer for the shift. *Id.* The FAC asserts that in investigating this incident, Officer Defendants "wrote deceptive police reports, and

made omissions and misstated material facts which deceived the prosecutor as to

the true facts of the case," *id.* ¶ 28, and targeted Andrews for prosecution.  *Id.*

¶ 36; *see also id.* ¶ 49.

    The FAC outlines various alleged misdeeds by Officer Defendants,

including that:

- Cabral, Hasegawa, and Stewart "told prejudicial stories" regarding Plaintiffs to coerce witnesses to provide testimony against Andrews, and had the witnesses recreate the positions of people and vehicles during the incident to assist in conforming their stories.  *Id.* ¶¶ 37-39.
- Officer Defendants falsely reported the facts of the incident to assert that there were two tow truck drivers involved and that there were multiple witnesses to Andrews' alleged reckless driving.  *Id.* ¶ 51.

- Cabral lost his original notes, failed to timely write up his report, and falsely reported the facts to the grand jury.  *Id.* ¶¶ 50, 52.

- Hasegawa knowingly omitted material information from his police report.  *Id.* ¶ 53.  Hasegawa also took photographs of the recreated incident to assist in conforming testimony, yet later asserted that these photographs were "lost" after Andrews was charged with a crime and sought these photographs to corroborate his version of events.  *Id.* ¶¶ 38, 41-46.  Plaintiffs assert that the loss of the photographs, combined with Defendants' lack of cooperation with discovery requests, unnecessarily delayed Andrews' trial.  *Id.* ¶¶ 47-48.

    The FAC asserts that Defendants' deceptive acts deceived the intake

prosecutor as to the true facts of the case, and the prosecutor would have otherwise

realized that the tow truck driver was not truthful.  *Id.* ¶¶ 56-57.  In particular, the

FAC asserts that Esteban covered up facts helpful to Andrews by using "a

deceptive investigative hand-off procedure" of having an officer unfamiliar with the original incident take over the investigation without notifying him of those facts helpful to Andrews and not having him do his own investigation.  *Id.* ¶¶ 58-61.  The FAC further asserts that Stewart "unduly influenced and induced the Office of the Prosecution to make the decision to pursue the prosecution of this case during discussions about a proposal to settle an unrelated case involving Defendant Stewart and Plaintiff Andrews, Criminal NO. 3PC08-1-000327, through mediation."  *Id.* ¶ 62.

On August 23, 2009, Andrews was arrested on one count of terroristic threatening and four counts of reckless endangerment, and was subsequently released on bail.  *Id.* ¶ 63.  A jury trial in the Third Circuit Court for the State of Hawaii (the "state action") was conducted between June 17, 2013 and June 25, 2013, and Andrews was found not guilty.  Doc. No. 55.

**B.     Procedural Background**

On August 23, 2011, Plaintiffs filed this action, and their FAC asserts claims titled: (1) False Arrest and Malicious Prosecution (Count I); (2) Selective Police Enforcement/Prosecution (Count II); (3) Interference with Access to the Courts (Count III); (4) Malicious Abuse of Process (Count IV); (5) Speedy Trial Rights (Count V); (6) Punitive Damages (Count VI); and (7) County Negligence

(Count VII).

On November 29, 2011, Defendants filed a Motion to Dismiss, or in the Alternative, to Stay Pending Judgment in the state action.  Doc. No. 29.  On December 23, 2011, the court granted the Motion to Stay, Doc. No. 45, and this case was stayed until July 3, 2013, when the court was notified that Andrews was found not guilty in a jury trial in the state action.  Doc. Nos. 53, 55.

On July 17, 2013, Defendants filed their current Motion to Dismiss. Doc. No. 57.  Plaintiffs filed an Opposition on August 23, 2013,[1] Doc. No. 59, and Defendants filed a Reply on August 28, 2013.  Doc. No. 61.  A hearing was held on September 16, 2012.

## III.  STANDARDS OF REVIEW

### A.    Rule 12(b)(6)

Plaintiffs are appearing pro se; consequently, this court will liberally construe their pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).)).  A court's duty to read a pro se litigant's complaint

---

[1] Defendants argue that the court should strike Plaintiffs' Opposition because it was filed one day late and after the court had already granted Plaintiffs an extension.  *See* Doc. No. 61, Defs.' Reply at 1-3.  The court declines this suggestion, but cautions Plaintiffs that they are expected to follow the Rules of this court, including all deadlines.

liberally, however, does not relieve the court of its duty to determine whether the complaint meets the requirements of Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to

require the opposing party to be subjected to the expense of discovery and

continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit

the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## B.    Rule 8

Additionally, the court may dismiss a complaint for failure to comply

with Federal Rule of Civil Procedure 8.  Rule 8 mandates that a complaint include

a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each

allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A

complaint that is so confusing that its "'true substance, if any, is well disguised'"

may be dismissed for failure to satisfy Rule 8.  *Hearns v. San Bernardino Police

Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*,

417 F.2d 426, 431 (9th Cir. 1969)).  Put slightly differently, a district court may

dismiss a complaint for failure to comply with Rule 8 where it fails to provide the

defendants fair notice of the wrongs they have allegedly committed.  *See McHenry

v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint

where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted).   "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179.

## IV.  ANALYSIS

Defendants raise various arguments that the FAC fails to comply with Rules 8 and 12(b)(6).  The court addresses each argument in turn.

### A.    Incorporation by Reference

Defendants argue, in largely conclusory fashion, that the FAC is confusing because each claim incorporates by reference the FAC's previous factual

allegations without identifying which particular allegations are relevant to each claim. Doc. No. 57-1, Defs.' Mot. at 6-7. To the extent Defendants argue that this practice violates Rules 8 and/or 12(b)(6), the court rejects this argument.

*Iqbal* explains that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Under this framework, this is not a case where the FAC asserts only conclusory statements -- the FAC includes many factual allegations. And considering the FAC in its entirety, it does not take too much effort to determine at least some factual basis for each claim asserted.[2] Thus, the court finds that the FAC generally provides fair notice of the wrongs allegedly committed.[3] *See Mendiondo*, 521 F.3d at 1105 (determining that dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling").

---

[2] For this reason, the court also rejects Defendants' conclusory argument that "Plaintiffs have not pled any facts which would give rise to civil liability on the part of any of the named defendants." Doc. No. 57-1, Defs.' Mot. at 14. The FAC contains numerous factual allegations as recited above. If Defendants had a specific argument as to a particular Defendant, they should have raised such argument.

[3] And if Defendants were unsure as to the *scope* of certain claims, they should have raised such arguments in their Motion to Dismiss as to particular claims instead of raising a generalized argument as to the FAC as a whole.

**B.     County Liability**

Defendants argue that Plaintiffs have failed to allege a plausible claim that the County is liable for any constitutional violations.  The court agrees.

The basic elements of a claim asserting government entity liability are well established:

> A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).  In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) ("Under *Monell,* municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'" (citing *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010)).

To allege a *Monell* claim in light of *Iqbal*, "allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1216). Further, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

The FAC asserts that the County "negligently failed and/or refused to enact sufficient official policies and procedures, properly train, supervise, and/or discipline [Officer Defendants], police officers, prosecutors, and workers at the county's green waste facility, and/or other persons under the supervision and control of [the County]." Doc. No. 23, FAC ¶ 99; *see also id.* ¶¶ 18, 32. The FAC further asserts that the County has "long been on actual notice that [the County] has a racism problem" towards Caucasians (and to Plaintiffs in particular) who "are targeted for harassment," and that its police officers discourage reporting such crimes. *Id.* ¶ 16, *see also id.* ¶¶ 25, 29. Finally, the FAC asserts that the County has "turned a blind eye and ha[s] created a culture of tolerance and indifference to

13

the rights of Caucasian citizens, and in particular to rights of Plaintiffs.  *Id.* ¶¶ 16, 26, 30, 49.

These conclusory allegations that the County has an impermissible policy, custom, or practice are insufficient to establish a plausible basis for holding the County liable.  The FAC does not meet the *Iqbal* standard -- it includes no factual allegations that (1) identify the particular policy, custom, or practice at issue; (2) explain how this policy, custom, or practice amounts to deliberate indifference to Plaintiffs' constitutional rights; or (3) explain how the particular policy, custom, or practice was the moving force behind the constitutional violations alleged in the FAC.  *See Starr*, 652 F.3d at 1216.  In short, the allegations are asserted in such a shotgun fashion that they fail to satisfy the *Iqbal* standard.  The court therefore DISMISSES the FAC's § 1983 claims against the County, with leave to amend.

## C.    Claim Preclusion and/or Issue Preclusion

Defendants argue that claim preclusion (formerly called "res judicata") bars Plaintiffs' claim that Andrews' sixth amendment right to a speedy trial was violated, as well as any claims based on the assertion that Officer Defendants maliciously provided false information and/or omitted information that would have invalidated probable cause for his arrest and/or indictment.  Doc. No.

57-1, Defs.' Mot. at 12-14.  Specifically, Defendants ask the court to take judicial

notice of two decisions made in the state court action denying Andrews' Motions

to Dismiss the indictment.  In denying these motions, the state court made findings

that (1) there was sufficient evidence presented to the grand jury to find probable

cause, Doc. No. 57-3, Defs.' Ex. 1; (2) the six-month period to bring a case to trial

outlined in Hawaii Rule of Penal Procedure 48 was not violated where certain time

periods are properly excluded from the calculation, Doc. No. 57-4, Defs.' Ex. 2;

and (3) Andrews had not shown sufficient prejudice to warrant dismissal for lack

of speedy trial on constitutional grounds.  *Id.*  Based on the following, the court

rejects that Defendants have carried their burden of establishing that issue and/or

claim preclusion bars Plaintiffs from raising their claims in this action.[4]

## 1.      *Preclusion Principles*

The court looks to Hawaii law to determine whether the decisions in

the state action have preclusive effect.  *See Migra v. Warren City Sch. Dist. Bd. of

Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a

state-court judgment the same preclusive effect as would be given that judgment

under the law of the State in which the judgment was rendered."); *see also Allen v.*

---

[4]  Because the court finds that the doctrines of claim preclusion and issue preclusion do
not apply to the state criminal action, the court need not determine whether the court should take
judicial notice of the state court action's findings.

*McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.").

There are two different preclusion doctrines -- claim preclusion and issue preclusion.  Under Hawaii law, claim preclusion prevents a party from relitigating "not only . . . issues which were actually litigated in [a prior] action, but also . . . all grounds of claim and defense which might have been properly litigated in the [prior] action."  *See Aganos v. GMAC Residential Funding Corp.*, 2008 WL 4657828, at *4 (D. Haw. Oct. 22, 2008) (quoting *Bremer v. Weeks*, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004)).  For claim preclusion to apply, Defendants have "the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question."  *Bremer*, 104 Haw. at 54, 85 P.3d at 161.

In comparison, issue preclusion prevents "a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action."  *Id.* (quoting *Dorrance v. Lee*, 90 Haw. 143, 148, 976 P.2d 904, 909 (1999) (emphasis in original)).  Issue preclusion is a "defensive use" to bar a party from re-litigating an issue against someone who was not a party

previously.  *See Aga v. Hundahl*, 78 Haw. 230, 248, 891 P.2d 1022, 1040 (1995)

(quoting *Rosa v. CWJ Contractors, Ltd.*, 4 Haw. App. 210, 216, 664 P.2d 745, 750

(1983)).  Defendants have the burden of establishing that:

> (1) the issue decided in the prior adjudication is identical
> to the one presented in the action in question; (2) there is
> a final judgment on the merits; (3) the issue decided in
> the prior adjudication was essential to the final judgment;
> and (4) the party against whom [issue preclusion] is
> asserted was a party or in privity with a party to the prior
> adjudication.

*Aganos*, 2008 WL 4657828, at *6-7 (quoting Restatement (Second) of Judgments

§ 27 cmt. c).

### 2.    *Application*

As an initial matter, it appears that Defendants confuse claim

preclusion with issue preclusion -- Defendants use the term "res judicata," yet cite

caselaw referring to the elements of issue preclusion.  Further confusing

Defendants' argument is that they give only cursory discussion of the relevant

elements for the preclusion doctrine they are applying.  Whether argued as claim

preclusion or issue preclusion, Defendants have failed to carry their burden of

establishing that either doctrine applies.

Defendants ask the court to do something highly unusual -- give

preclusive effect in this civil action to factual findings made by another court in

denying motions to dismiss a criminal action, which ultimately resulted in

acquittal.  This court was unable to find (and Defendants do not cite) any Hawaii

cases addressing similar circumstances.  There is ample authority, however, for the

proposition that preclusion doctrines do not extend from criminal prosecutions to

later civil actions.  *See, e.g.*, *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th

Cir. 1999) ("[W]e decline to extend res judicata to bar this claim where there is no

indication that Ingram and Collins, who would have been in a defensive posture

during criminal proceedings on the obstruction charges, could have raised their

§ 1983 claims during those proceedings."); *Donovan v. Thames*, 105 F.3d 291, 296

(6th Cir. 1997) (collecting cases where courts have "concluded that a conviction

for resisting arrest does not preclude a § 1983 claim for excessive force"); *Vinson

v. Campbell Cnty. Fiscal Ct.*, 820 F.2d 194, 197 (6th Cir. 1987) ("Collateral

estoppel or issue preclusion is not applicable in the present case because neither the

validity of the summons nor the legality of the arrest was litigated or decided in the

prior state court proceeding."); *Neaderland v. Comm'r*, 424 F.2d 639, 642 (2d Cir.

1970) (declining to apply collateral estoppel where a defendant was acquitted on

criminal charges of tax fraud and sought to accord that acquittal preclusive effect

in a subsequent action in which the defendant faced civil charges of tax fraud); *see

also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Practice

& Procedure* § 4474, at 420 (2005) ("Our traditional division between civil and

criminal procedure does not contemplate any opportunity for joining any civil

claim with the criminal prosecution.  Thus it is manifest that a different claim or cause of action is involved in a subsequent civil action between private parties, or in an action brought by the criminal defendant against the government.").

Indeed, for purposes of claim preclusion, Andrews could not have raised his civil claims in the state criminal action such that there is no identity of claims.  *See Aganos*, 2008 WL 4657828, at *4 (describing that claim preclusion bars "not only . . . issues which were actually litigated in [a prior] action, but also . . . all grounds of claim and defense which might have been properly litigated in the [prior] action").  Further, there was no final judgment on the merits as to the claims that Andrews now raises regarding his speedy trial rights and lack of probable cause.  Rather, the state court made factual findings on motions to dismiss, which could not be appealed after the acquittal.

Nor can Defendants establish the elements necessary for issue preclusion.  Although issue preclusion requires an identity of "issues" as opposed to "claims," this slight difference between the doctrines offers Defendants no relief.  Indeed, Defendants fail to explain in any meaningful way how the state court's factual determinations, made in ruling on motions to dismiss, address the same issues as presented in this action -- Defendants have provided the court no information regarding the precise arguments raised before the state court or the standard the state court applied in addressing those motions.  *See also Aganos*,

2008 WL 4657828, at *6 (explaining that a factor to consider for identity of issues is whether "there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first").  Second, as explained above for claim preclusion, there was no final judgement on the merits on these issues.  Finally, the issues do not appear essential to Andrews' acquittal -- Andrews was acquitted by a jury, which did not consider any of the issues presented to the state court on the motions to dismiss.

In sum, Defendants have failed to carry their burden of establishing that either claim preclusion or issue preclusion applies to the factual findings made by the state court.  The court therefore DENIES Defendants' Motion to Dismiss to the extent it argues that any of Plaintiffs' claims are barred by claim preclusion or issue preclusion.

## D.   Plaintiffs' Claim for False Arrest/Malicious Prosecution (Count I)

The FAC asserts that Officer Defendants (1) "knowingly provid[ed] false information and omitt[ed] from the police records material information which, if included, would have invalidated probable cause;" (2) "deceived the intake prosecutor as to the true facts of the case and created false testimony at the grand jury;" (3) "caused the criminal proceedings to be initiated which resulted in Plaintiff Andrews' false arrest;" and (4) "intentionally violated Plaintiff Andrews' liberty without any probable, sufficient, just, or reasonable cause in violation of

rights guaranteed to him by the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution."  Doc. No. 23, FAC ¶ 74.  Defendants argue that these allegations are insufficient to establish a malicious prosecution claim because the grand jury independently made a determination of probable cause.[5]  Doc. No. 57-1, Defs.' Mot. at 15-17.  Based on the following, the court agrees that Plaintiffs have not pled sufficient facts to state a plausible claim.

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show "that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"[6] *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).  "In general, a claim of malicious prosecution is not

---

[5]  Defendants also argue that to the extent Plaintiffs are asserting a claim for false arrest and/or imprisonment, this claim fails given that the state court already determined that sufficient evidence was provided for a grand jury to find probable cause.  Doc. No. 57-1, Mot. at 14-15.  Because Defendants have failed to establish that claim preclusion or issue preclusion applies, the court rejects this argument.  And in any event, although the state court determined that "[t]here was sufficient evidence presented at grand jury to find probable cause" for the indictment, Doc. No. 57-3, Defs.' Ex. 1, it appears that the state court made no determination as to probable cause for the arrest.  *See Rutledge v. Cnty. of Sonoma*, 2009 WL 3075596 (N.D. Cal. Sept. 22, 2009) (noting a difference between lack of probable cause for a false arrest claim versus lack of probable cause to prosecute for a malicious prosecution claim).

[6]  As held in *Albright v. Oliver*, 510 U.S. 266 (1994), "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004).  A plaintiff may, however, base a malicious prosecution claim on the assertion that defendants acted with the purpose of depriving him of some other specific constitutional right.  *Id.*

cognizable under § 1983 'if process is available within the state judicial systems'

to provide a remedy," although the Ninth Circuit has "held that an exception exists

. . . when a malicious prosecution is conducted with the intent to . . . subject a

person to a denial of constitutional rights." *Id.* (quoting *Bretz v. Kelman*, 773 F.2d

1026, 1031 (9th Cir. 1985) (en banc)).  "Malicious prosecution actions are not

limited to suits against prosecutors but may be brought, as here, against other

persons who have wrongfully caused the charges to be filed." *Awabdy v. City of*

*Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. Cnty. of Santa*

*Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

  The court must look to Hawaii law "to determine the legal effect of

the state court's action because [the Ninth Circuit has] incorporated the relevant

elements of the common law tort of malicious prosecution into [the] analysis under

§ 1983." *Id.*  "Under Hawaii law, a grand jury [] functions to determine whether

probable cause exists [and] [t]here is also a presumption that the grand jury acted

upon sufficient and legal evidence." *McCarthy v. Mayo*, 827 F.2d 1310, 1317 (9th

Cir. 1987) (citing *Hawaii v. Jenkins*, 1 Haw. App. 430, 620 P.2d 263, 267 (1980));

*see also Hawaii v. Apao*, 59 Haw. 625, 637-38, 586 P.2d 250, 259 (1978)

(providing that the burden is on the plaintiff to present evidence that the grand jury

deliberations were so infected as to invalidate the indictment).

Applying these principles, because a grand jury indicted Andrews, there is a presumption that the grand jury acted independently in making the probable cause determination.  The FAC includes no allegations establishing that there was insufficient evidence or that the grand jury deliberations were so infected as to invalidate the indictment.  Rather, the FAC includes only conclusory allegations of falsified and/or omitted evidence.  These conclusory allegations, without particular factual assertions, are insufficient for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The court therefore GRANTS Defendants' Motion as to Count I to the extent it asserts a claim for malicious prosecution, with leave to amend.

## E.   Plaintiffs' Claim for Selective Police Enforcement/Prosecution (Count II)

The FAC asserts that Officer Defendants "targeted Plaintiff Andrews for prosecution and Plaintiff Andrews was selected based upon an unjustifiable standard such as his race, place of origin, length of residency, beliefs about mental disability, out of personal animus towards a class of one, and/or to prevent the exercise of a fundamental right to petition his government for a redress of grievances about police officers, reasons wholly unrelated to any legitimate state objective."  Doc. No. 23, FAC ¶ 77.  Defendants argue that these allegations fail to

23

allege a plausible claim for relief.  The court agrees.

"The two elements of a selective prosecution claim are that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive."  *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (per curiam) (quoting *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir. 1983)).  Discriminatory enforcement is not limited to prosecution, and "may be shown through a variety of actual or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police."  *Lacey*, 693 F.3d at 920.  And in order to state a claim of discriminatory effect, a plaintiff must "allege some facts, either anecdotal or statistical, demonstrating "that similarly situated defendants . . . could have been prosecuted, but were not."  *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).

Although the FAC asserts that Officer Defendants investigated and had the prosecutor charge and prosecute Andrews based on various impermissible motives, the FAC does not allege any facts suggesting that other similarly situated individuals have not been prosecuted.  As a result, Plaintiffs have failed to allege a plausible claim for relief and the court GRANTS Defendants' Motion to Dismiss, with leave to amend.

**F.      Rohr as a Plaintiff**

Defendants argue that Rohr's claims fail because they are all based on constitutional violations of Andrews' rights, not Rohr's rights.  Doc. No. 57-1, Mot. at 21-23.  To the extent Plaintiffs' claims are based on violations of Andrews' rights, the court agrees -- the Ninth Circuit has expressly held that "§ 1983 damages are available only for violations of a party's own constitutional rights."  *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) (emphasis added); *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011).  As a result, Plaintiffs' claims for (1) False Arrest and Malicious Prosecution (Count I), (2) Selective Police Enforcement/Prosecution (Count II), (3) Interference with Access to the Courts (Count III), (4)  Malicious Prosecution (Count IV), (5) Speedy Trial Rights (Count V), and (6) Punitive Damages (Count VI) fail as to Rohr.  The court GRANTS Defendants' Motion to Dismiss Rohr as to Counts I-VI.  Because granting leave to amend these claims would be futile, this dismissal is without leave to amend.

The court further finds, however, that the FAC asserts some allegations which suggest that Plaintiffs are attempting to assert a claim for retaliatory prosecution.  To assert such claim, Plaintiffs must establish "that the officials secured his arrest or prosecution without probable cause and were

25

motivated by retaliation against the plaintiff's protected speech." *See Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).  Such claim may be the basis of a violation of Rohr's constitutional rights -- that Defendants targeted and prosecuted Andrews in retaliation for particular speech of both Andrews and Rohr.  The court therefore grants leave for both Plaintiffs to file a Second Amended Complaint asserting a claim for retaliatory prosecution, if they are indeed attempting to assert such claim.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

As to Count I (False Arrest and Malicious Prosecution), the court dismisses this claim as to Rohr without leave to amend, and dismisses the claim to the extent it asserts a malicious prosecution claim as to Andrews with leave to amend.  Remaining is Andrews' false arrest claim.

As to Count II (Selective Police Enforcement/Prosecution), the court dismisses this claim as to Rohr without leave to amend, and dismisses the claim as to Andrews with leave to amend.

As to Count III (Interference with Access to the Courts), the court dismisses this claim as to Rohr without leave to amend, and remaining is Andrews'

26

claim.

As to Count IV (Malicious Abuse of Process), the court dismisses this claim as to Rohr without leave to amend, and remaining is Andrews' claim.

As to Count V (Speedy Trial Rights), the court dismisses this claim as to Rohr without leave to amend, and remaining is Andrews' claim.

As to Count VI (Punitive Damages), the court dismisses this claim as to Rohr with leave to amend, and remaining is Andrews' claim.

By December 2, 2013, Plaintiffs may file a Second Amended Complaint in which Andrews asserts claims for Malicious Prosecution (Count I) and Selective Police Enforcement/Prosecution (Count II), and both Plaintiffs assert claims for retaliatory prosecution. Thus, as to Rohr, leave is granted for her to assert only a claim for retaliatory prosecution and a derivative punitive damages claim. To the extent each Plaintiff is asserting and/or is granted leave to assert claims of constitutional violations, they are granted leave to assert a claim alleging County liability.

Leave is not granted for Plaintiffs to assert any claims beyond those addressed in this Order (*i.e.*, Plaintiffs may not assert new claims or wholly new factual allegations unrelated to the claims asserted in the FAC, but Plaintiffs may include the fact that subsequent to the filing of this action, a jury found Andrews

not guilty of the criminal charges against him).  If Plaintiffs wish to assert additional claims not raised in the FAC or this Order, they must comply with Federal Rule of Civil Procedure 15.

Plaintiffs are notified that a Second Amended Complaint will supersede the FAC.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the FAC as nonexistent.  *Ferdik*, 963 F.2d at 1262. If Plaintiffs fail to file a Second Amended Complaint by December 2, 2013, this action will proceed as to the claims remaining in the FAC.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 17, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Andrews et al. v. Hawaii Cnty. et al.*, Civ. No. 11-00512 JMS/BMK, Order Granting in Part and Denying in Part Defendants Hawaii County, Gregory Esteban, John P. Stewart, Corey Hasegawa, and Casey Cabral's Motion to Dismiss First Amended Complaint for Damages Filed November 18, 2011, Doc. No. 57